**E-Filed 6/8/2010**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRYAN RUSSELL,<br><br>        Plaintiff,<br><br>    v.<br><br>INDYMAC BANK, F.S.B., QUALITY LOAN SERVICE CORP., AND DOES 1-10, inclusive,<br><br>        Defendants. | Case Number C 09-03134 JF (PVT)<br><br>ORDER[1] RE JURISDICTION |

On June 11, 2009, Plaintiff Bryan Russell ("Plaintiff") filed a complaint in the Santa Clara Superior Court against Defendants IndyMac Bank, F.S.B. ("IndyMac"), Quality Loan Service Corp.,[2] and Does 1-10, alleging seven state-law claims for relief.[3] On June 4, 2009,

---

[1] This disposition is not designated for publication in the official reports.

[2] On August 13, 2009, Plaintiff voluntarily dismissed Quality Loan Service Corp. pursuant to Fed. R. Civ. P. 41(a).

[3] Plaintiff's alleged claims for relief, each arising from a loan secured by a Deed of Trust on Plaintiff's property located at 2098 Ardis Drive, San Jose, California 95125, include: breach of contract, promissory estoppel, cancel of trustee's deed, quiet title, declaratory relief, accounting, and negligence.

Plaintiff filed an amendment to his complaint naming OneWest Bank, F.S.B. and the Federal Deposit Insurance Corporation ("FDIC") as additional defendants.  On July 10, 2009, the FDIC, in its capacity as Receiver for IndyMac and IndyMac Federal Bank, F.S.B. ("IndyMac Federal"), removed the instant action to this Court based solely upon its status as a party to the case pursuant to 12 U.S.C. § 1819(b)(2)(B) and then moved to dismiss the action for failure to state a claim upon which relief may be granted. On April 20, 2010, the Court determined that the instant action was moot as to the FDIC based upon the Board of Directors' formal determination that the total assets of the IndyMac and IndyMac Federal receiverships were worthless. 74 Fed.Reg. 59540 (published notice of worthlessness determination) (stating that all unsecured creditors' claims have no value).  In light of this determination, the Court ordered the parties to show cause why it should continue to assert jurisdiction over the instant action.  Plaintiff has not filed a response.  Defendant OneWest Bank ("OneWest") contends that this Court retains original jurisdiction under Section 1819 notwithstanding the dismissal of the FDIC.

       The Ninth Circuit has not addressed this issue in a published opinion.  However, the Court is informed by an unpublished decision in which the Ninth Circuit concluded that a "district court did not lose jurisdiction merely because the claims against the FDIC were dismissed. *See Imagineering, Inc. v. Kiewit Pacific, Co.*, 976 F.2d 1303, 1309 (9th Cir. 1992), cert. denied, 113 S.Ct. 1644 (1993).  The district court had the *discretion* to dismiss the state law claim or to adjudicate the claim on the merits. *Id.*" Diehl v. FDIC, 19 F.3d 26, 1994 WL 68239, at *2 (9th Cir. 1994).  While the memorandum disposition in *Diehl* does not contain any detailed analysis of the jurisdictional question, the memorandum does make clear that retaining the action after dismissal of the FDIC lay within the discretion of the district court. *Id.*

       There is a conflict among the circuits that have issued published opinions addressing this issue.  The Fifth and Second Circuits have held that the Court retains original jurisdiction under Section 1819 notwithstanding the subsequent dismissal of the FDIC. *Adair v. Lease Partners, Inc.,* 587 F.3d 238, 242 (5th Cir. 2009), citing *FSLIC v. Griffin,* 935 F.2d 691, 697 (5th Cir. 1991) (holding that while the language of Section 1819(b)(2)(a) does not specifically address what happens to a court's jurisdiction when the FDIC is dismissed as a party, the power to

2

Case Number C 09-03134 JF (PVT)
ORDER RE JURISDICTION
(JFLC1)

remove is determined at the time of removal and that policy reasons favored recognizing jurisdiction over those that receive a transfer of interests from the FDIC); *FDIC v. Four Star Holding Co.,* 178 F.3d 97, 100-101 (2nd Cir. 1999) (holding that "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events" and reasoning that "adopting a rule which would make federal jurisdiction contingent on who owned an interest in certain property at a particular time could well have the effect of deterring normal business transactions during the pendency of what might be lengthy litigation and could also deter transactions by FDIC that are presumably in the public interest").

      The Third Circuit reached the opposite conclusion and held that the district court does not retain original jurisdiction under these circumstances, although it still retains supplemental jurisdiction under Section 1367.  *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.,* 101 F.3d 1492, 1497-1501 (3d Cir. 1996) (reasoning within the context of the RTC's jurisdictional provision corresponding to the FDIC's § 1819 that: (1) a plain and narrow reading of the statute supports the conclusion that original jurisdiction exists only when the FTC *is* a party to the case, not when it *was* a party to the case; (2) the legislative purpose of the statute was to provide the RTC with the "broader scope of a federal remedy [to] boost[] the RTC's enforcement authority...The role of federal jurisdiction in assisting the RTC in its management role and in disposing of thrift assets also indicates that once this has been accomplished, the reasons for federal jurisdiction end"; (3) the general policy of limiting federal jurisdiction favors the conclusion that the Court does not retain original jurisdiction; and (4) "the principle that jurisdiction is determined at the outset of the action is simply insufficient to support" continuing original jurisdiction here – "the policies behind removal and the risks of manipulative behavior" are not a concern in the present dispute as they can be in the diversity context).  The district court in *New Rock* in fact did conclude that it retained supplemental jurisdiction under Section 1367.  *Id.* at 1504-11 (holding that Congress intended to provide the federal courts with the discretion to exercise supplemental jurisdiction in the present circumstances and that this grant of jurisdiction did not "exceed the scope of Article III of the United States Constitution").

3

This Court finds *Diehl* instructive and the holding in *New Rock* persuasive. A plain reading of the statutory language and the legislative purpose behind Section 1819 supports the conclusion that original jurisdiction does not survive dismissal of the FDIC, but that a district court still has discretion to exercise its supplemental jurisdiction. In this case, the FDIC moved to dismiss the action against it on mootness grounds and the Court sua sponte issued an order to show cause re jurisdiction. Plaintiff made no motion to remand the case, nor did it respond to the Court's order to show cause. Moreover, the Second Circuit's concern in *Four Star* with respect to "federal jurisdiction [being] contingent on who owned an interest in certain property at a particular time" and "deterrence of normal business transactions during the pendency of what might be lengthy litigation" can be addressed by a district court's informed and reasoned application of supplemental jurisdiction principles. *Four Star*, 178 F.3d at 100-101.

OneWest requests that the Court retain supplemental jurisdiction over the instant action "at least long enough to determine whether this matter ought to be dismissed, rather than remanded, if it appears Plaintiff has abandoned the matter." Letter Brief at 3. As OneWest points out, Plaintiff did not appear at the last status conference, nor did he oppose the FDIC's motion to dismiss on mootness grounds. OneWest also informs the Court that its requests for mediation "have gone unanswered." *Id.* As noted previously, Plaintiff did not respond to this Court's order to show cause re jurisdiction. Accordingly, the Court will exercise its supplemental jurisdiction over the instant action solely to determine whether the action should be dismissed for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

## IV. ORDER

Plaintiff is hereby ordered to show cause why this Court should not dismiss the instant action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b). Plaintiff shall submit a responsive letter brief not to exceed three pages in length on or before June 14, 2010. If Plaintiff does not submit a letter brief on or before that date, the instant action shall be dismissed without further proceedings.

1   IT IS SO ORDERED.

2   DATED: 6/8/2010

3

4   _____
    JEREMY FOGEL
5   United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

Case Number C 09-03134 JF (PVT)
ORDER RE JURISDICTION
(JFLC1)